IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AMERICAN HOME ASSURANCE CO.,<br><br>　*Plaintiff,*<br>v.<br><br>GLOBAL CONSTRUCTION COMPANY, LLC,<br><br>　*Defendant,*<br><br>and<br><br>TOLL BROTHERS REALTY TRUST and PRINCETON JUNCTION APARTMENTS, LP,<br>　*Nominal Defendants.* | CIVIL ACTION<br>NO. 14-07319 |

**PAPPERT, J.**　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　**AUGUST 19, 2015**

**<u>MEMORANDUM</u>**

American Home Assurance Company ("American Home") seeks a declaration of its obligations under a commercial umbrella liability policy issued to Global Construction Company, LLC ("Global"). "Nominal defendants" Toll Brothers Realty Trust and Princeton Junction Apartments LP (collectively "Toll Brothers") move to dismiss, or in the alternative, stay the action pending the outcome of a similar declaratory judgment proceeding currently being litigated in the Superior Court of New Jersey. The Court grants the Motion.

**I.**

The issues underlying this case trace back to 2003, when Toll Brothers entered into a Construction Management Agreement with Global[1] for the construction of an apartment complex in New Jersey—the Mews at Princeton Junction. (Compl. ¶ 8, ECF No. 1.) Construction began in 2004 and the last set of buildings was completed by December 15, 2006. (*Id.* ¶ 10.)

---

[1] 　Global has not appeared. A default was entered against Global, at American Home's request, on May 7, 2015. (*See* ECF No. 16.)

In 2010, Toll Brothers sued Global and other defendants seeking damages for alleged construction defects in the apartment complex ("New Jersey Underlying Action"). The lawsuit was filed in the Superior Court of New Jersey, Mercer County ("Superior Court") and docketed at MER-L-2926-10. (*Id.* ¶ 23.) Toll Brothers has twice amended its complaint, most recently in January 2014, and now asserts two claims against Global: breach of contract and negligent construction. (*Id.* ¶¶ 24, 26-27; *see also id.* at Ex. B.) Toll Brothers avers that water intrusion, caused by construction defects, damaged the property after the completion of the last building in the complex. (*Id.* ¶¶ 25, 29.) Toll Brothers retained contractors to repair the defects at a cost of more than $4 million.[2] (*Id.* ¶ 30.)

American Home issued Global a commercial umbrella liability policy effective from October 1, 2005 to October 1, 2006 ("American Home Policy"). (*Id.* ¶ 11.) The policy "sat directly above commercial general liability policy number GLO-3499485, effective from October 1, 2005 to October 1, 2006, which was issued by Zurich North America." (*Id.* ¶ 17.) The American Home Policy obligates American Home to pay sums in excess of a defined "Retained Limit" for which Global becomes legally responsible as a result of liability incurred because of Bodily Injury, Property Damage, or Personal Injury and Advertising Injury or because of Bodily Injury or Property Damage to which the policy applies assumed by Global under an Insured Contract. (*Id.* ¶ 19.)

On January 14, 2014, Global notified American Home of Toll Brothers' claims and sought coverage. (*Id.* ¶ 31.) American Home contends that Global seeks coverage to reimburse Toll Brothers for the cost of the remedial work. (*Id.*) On October 14, 2014, American Home

---

[2] Since American Home filed this action Toll Brothers settled with Global. (*See* Def.'s July 8, 2015 Letter, ECF No. 22) As part of that settlement, Global assigned its rights under the American Home Policy to Toll Brothers. (*Id.* at Ex. A.)

advised Global that the American Home Policy "does not or may not" provide coverage for some or all of Toll Brothers' claims.  (*Id.* ¶ 32; *see also id.* at Ex. C.)

On December 23, 2014, Toll Brothers filed a declaratory judgment action in the Superior Court against all seven of Global's insurance carriers ("New Jersey Coverage Action").  (*See* Defs.' Mot. Dismiss Ex. J.)  The New Jersey Coverage Action seeks declarations as to American Home's obligations as well as the six other insurers that issued primary, excess, and/or additional coverage (under fourteen separate policies) with regard to Toll Brothers' claims against Global. (Defs.' Mot. Dismiss 4; *see also id*. at Ex. J.)  Six days later, American Home filed this declaratory judgment action, seeking a declaration that the American Home Policy does not provide coverage for claims asserted by Toll Brothers against Global.  (*See* ECF No. 1.)

Toll Brothers moves to dismiss the complaint on two grounds.  It first contends that American Home failed to plead facts sufficient to allege diversity jurisdiction pursuant to 28 U.S.C. § 1332.  It also asks the Court to decline to exercise jurisdiction over the declaratory judgment action.  Because the Court declines to hear this action, it does not address Toll Brothers' first argument.  *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 585 (1999) ("It is hardly novel for a federal court to choose among threshold grounds for denying audience to a case on the merits.").

## II.

The Declaratory Judgment Act provides in pertinent part that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C.

3

§ 2201(a) (emphasis added).  The United States Supreme Court has interpreted this permissive language to provide district courts the discretion to stay or to dismiss a declaratory judgment action when there is a parallel proceeding pending in state court.  *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995) ("A district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close.").  Courts exercising this discretion "are governed by 'considerations of practicality and wise judicial administration.'"  *Reifer v. Westport Ins. Co.*, 751 F.3d 129, 139 (3d Cir. 2014) (quoting *Wilton*, 515 U.S. at 288).

The Third Circuit recently announced a "uniform approach" district courts should take when exercising discretionary jurisdiction over declaratory judgment actions.  *Id.* at 146.  District courts must consider the following factors to the extent they are relevant:

(1) the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy;

(2) the convenience of the parties;

(3) the public interest in settlement of the uncertainty of obligation;

(4) the availability and relative convenience of other remedies;

(5) a general policy of restraint when the same issues are pending in a state court;

(6) avoidance of duplicative litigation;

(7) prevention of the use of the declaratory action as a method of procedural fencing, or as a means to provide another forum in a race for *res judicata*; and

(8) (in the insurance context), an inherent conflict of interest between an insurer's duty to defend in a state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion.

*Id.* (footnote omitted).

As a threshold matter "[t]he existence of pending parallel state proceedings militates significantly in favor of declining jurisdiction, although it alone does not require doing so." *Reifer*, 751 F.3d at 145. The Supreme Court has broadly defined such an action as "another proceeding pending in a state court in which all matters in controversy between the parties could be fully adjudicated." *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942). More recently, the Supreme Court deemed a state proceeding parallel to a federal declaratory judgment action because it "involve[d] the same parties and present[ed] opportunity for ventilation of the same state law issues." *Wilton*, 515 U.S. at 283. The New Jersey Coverage Action does more than present the "opportunity for ventilation of the same state law issues;" it seeks, *inter alia*, a declaration regarding American Home's coverage obligations under the American Home Policy.

Because there is a pending parallel proceeding, the focus becomes "whether the questions in controversy between the parties to the federal suit, and which are not foreclosed under the applicable substantive law, can be better settled in the proceeding pending in the state court." *Brillhart*, 316 U.S. at 495; *see also Reifer*, 751 F.3d at 146 & n.2 (directing district courts to consider the *Brillhart* factors when applicable). This requires some inquiry into the "scope of the pending state court proceeding" as well as "whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding, whether necessary parties have been joined, whether such parties are amenable to process in that proceeding, etc." *Brillhart*, 316 U.S. at 495.

American Home asserts that this Court is better positioned to interpret Pennsylvania law, which it contends governs the American Home Policy, than the Superior Court. (Pl.'s Opp'n Mot. Dismiss 13.) This argument is undercut by American Home's recognition that the parties dispute what law governs the policy. (*Id.*) It is thus not apparent, at this juncture, that this Court

would apply Pennsylvania law.[3]  This choice of law issue can just as easily be resolved by the Superior Court.  *See First Mercury Ins. Co. v. Legends*, 914 F. Supp. 2d 644, 649 (E.D. Pa. 2012) ("[S]tate and federal courts are equally competent to apply out-of-state law.").  There is no need to engage in duplicative analyses.  Furthermore, the New Jersey Coverage Action, unlike this action, joins all parties relevant to the dispute and addresses the potential liability of all of Global's insurers.  The Superior Court is thus better situated to settle the entire controversy.

The Court must next consider whether "the existence of this pending parallel state proceeding is outweighed by" the remaining factors.  *Reifer*, 751 F.3d at 144-45.  The avoidance of duplicative litigation, and the attendant interest to conserve judicial resources, is best served by declining to exercise jurisdiction over this matter.  Allowing the Superior Court to interpret all of the insurance policies before it—as opposed to this Court examining only the specific terms, conditions, exclusions and endorsements of a single insurance policy in a vacuum—will prevent duplicative factual and legal inquiries and avoid the risk of inconsistent verdicts that may create *res judicata* problems.  *See, e.g.*, *State Auto Ins. Co. v. Summy*, 234 F.3d 131, 135 (3d Cir. 2000) ("A federal court should also decline to exercise its discretionary jurisdiction when doing so would promote judicial economy by avoiding duplicative and piecemeal litigation.").

The first *Reifer* factor—the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy—also counsels against exercising jurisdiction.  Because of the narrower scope of this action, a declaration from this Court may

---

[3] A district court sitting in diversity applies the choice of law principles of the forum state. *Specialty Surface Int'l, Inc. v. Continental Cas. Co.*, 609 F.3d 223, 229 (3d Cir. 2010) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)).  Therefore, if the Court were to entertain this case, it would apply Pennsylvania's choice of law provisions.  It is not clear, however, whether a choice of law analysis under Pennsylvania law would result in the application of Pennsylvania substantive law.

resolve the "uncertainty of [American Home's] obligations" more expeditiously.[4]  A declaration by this Court will not, however, resolve the entire controversy pending in New Jersey, and it may further complicate the Superior Court's determination of the priority of insurance policies in the New Jersey Coverage Action.  (*See* Defs.' Mot. Dismiss 15.)  Thus, the "state court would serve as a better forum . . . to more fully explore the implications that a declaratory judgment might have on the underlying dispute and other claims pendant to its determination."  *Ironshore Specialty Ins. Co. v. Haines & Kibblehouse, Inc.*, 3 F. Supp. 3d 303, 312 (E.D. Pa. 2014).

The remaining relevant *Reifer* factors—"the convenience of the parties," "the public interest in settlement of the uncertainty of obligations," and "the availability and relative convenience of other remedies"—are neutral.[5]  The parties are actively litigating the New Jersey Coverage Action.[6]  (*See* Def.'s July 23, 2015 Letter, ECF No. 25.)  The Superior Court, an equally convenient forum, will declare the parties' obligations and resolve the larger coverage dispute.  Additionally, there is no particular "public interest in the settlement of the uncertainty of

---

[4]    American Home has filed a motion for summary judgment in this action. (Pl.'s Mot. Summ. J., ECF Nos. 18, 19.)  Toll Brothers responded to the motion (Defs.' Opp'n Mot. Summ. J., ECF No. 21) and American Home replied (Pl.'s Reply, ECF No. 27.)  The motion is ripe for disposition.  This progress does not, however, counsel against declining to exercise jurisdiction.  Toll Brothers have not answered the complaint.  The Court has not held a Rule 16 Conference or established a case management schedule.  No discovery has been conducted.  There is no need to duplicate the Superior Court's efforts to resolve a sliver of the larger coverage dispute.

[5]    Global's liability has been resolved.  (*See* Def.'s July 8, 2015 Letter.)  The eighth *Reifer* factor—"an inherent conflict of interest between an insurer's duty to defend in a state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion"—is thus not implicated.  Also, despite the fact that American Home filed this action a mere six days after Toll Brothers filed the New Jersey Coverage Action, American Home asserts that it was unaware of the Toll Brothers' filing.  (Pl.'s Opp'n Mot. Dismiss 14.)  American Home further states that it chose this forum for other substantive and procedural reasons.  (*Id.*)  The Court accepts American Home's stated reasons for filing this case here, and thus the seventh *Reifer* factor—"prevention of the use of the declaratory action as a method of procedural fencing, or as a means to provide another forum in a race for *res judicata*"—merits no further analysis.

[6]    On July 20, 2015 the Superior Court lifted a stay in the New Jersey Coverage Action.  (*See* Def.'s July 23, 2015 Letter.)  Since then, Toll Brothers have served discovery requests upon American Home.  (*Id.*)  At a status conference held on July 28, 2015, counsel for American Home informed the Court that it intended to seek a reinstatement of the stay.  There is no indication that the Superior Court has since reinstated the stay.

obligations" by this Court when identical questions of liability are pending in the New Jersey Coverage Action.

None of the relevant *Reifer* factors outweigh the existence of the New Jersey Coverage Action, a more comprehensive parallel state court proceeding.  As the Supreme Court recognized long ago, "it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties."  *Brillhart*, 316 U.S. at 495.  The Court accordingly declines to exercise jurisdiction over this action.[7]

An appropriate Order follows.

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.

---

[7] The Supreme Court has observed that "where the basis for declining to proceed is the pendency of a state proceeding, a stay will often be the preferable course, because it assures that the federal action can proceed without risk of a time bar if the state case, for any reason, fails to resolve the matter in controversy."  Here, however, the Superior Court will resolve the exact questions American Home raises in this action, and the parties will be bound by the ruling under principles of *res judicata*.  There is thus no reason to stay this case pending the outcome of the New Jersey Coverage Action.  *See Ironshore Specialty Ins. Co.*, 3 F. Supp. 3d at 312 n.28 (dismissing rather than staying a declaratory judgment action in part because of a pending parallel state court declaratory judgment action).